IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERTA R. CARPENTER,<br>Surviving Joint Cotenant,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-1740C<br>(Judge George W. Miller) |

DEFENDANT'S REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

In our moving brief, we established that plaintiff, Roberta R. Carpenter ("Carpenter"), failed to allege in her complaint that she was ever a party to the contract upon which her claims are based, and that, because of the absence of allegations indicating privity of contract with the Government, there was no applicable waiver of sovereign immunity or source of jurisdiction in this Court to entertain the contract claims asserted, nor any cause of action stated for breach of contract. We also demonstrated that the complaint failed to state a cause of action for a taking of property without just compensation, because, among other things: (1) to the extent that the property purportedly taken was a right under the alleged contract, the complaint alleged no facts indicating that Carpenter possessed any rights under the contract; (2) to the extent that the property purportedly taken was an interest in the housing projects described in the complaint, the complaint failed to allege that Carpenter possessed any interest in these projects at the time of the alleged taking; and (3) it was apparent from the complaint that the projects were subject to the challenged use restrictions before she acquired any interest in these projects, that these restrictions were to remain in effect until the Farmers Home Administration ("FmHA") loans

secured by the projects were paid in full, and that she never acquired a contractual right to terminate these restrictions by prepaying the loans.

In her response, Carpenter adds certain factual assertions that were missing from the complaint, but these facts, even if read into the complaint and taken as true, do not cure the fundamental flaws in the complaint. In particular, although Carpenter adds some details concerning her acquisition of her ownership interest in the projects, she ignores the fact that the prepayment right that is at the heart of her case is contained only in the promissory note made by the borrower to the Government, and that Carpenter was never a party to that note; she did not sign the note, nor did she enter into any assumption agreement or otherwise assume the obligations contained in the note. Thus, if the Government repudiated the prepayment right set forth in the note, failed to permit prepayment, or failed to release the projects from restrictions that would have ended upon prepayment, this did not constitute either a breach of Carpenter's contract rights or a taking of Carpenter's property.

## ARGUMENT

### I. Carpenter's Breach of Contract Claim Must Be Dismissed for Lack of Privity

Carpenter argues at length that under Montana law, she became the owner of the projects by operation of law, and therefore stepped into the shoes of the original owners and assumed their rights and obligations. In making this argument, however, Carpenter ignores the difference between the rights and obligations incident to ownership of the projects – including those set forth in the FmHA mortgages on the projects – and the rights and obligations created by the promissory notes.

The facts asserted and the legal authorities cited by Carpenter indicate nothing more than that she acquired these properties subject to the FmHA mortgages. Carpenter does not allege, much less demonstrate, that she also assumed the notes. The acquisition of real property subject to a mortgage does not in itself entail the assumption of the debt secured by the mortgage, and does not place the acquiring party in the position of the borrower with respect to the rights and obligations created by the note. See Chrysler First Business Credit Corp. v. Kawa, 914 P.2d 540, 543 (Colo. Ct. App. 1996) ("[i]f real property is sold 'subject to' an existing mortgage, the buyer acquires the property burdened with that mortgage, and if the buyer does not also assume the mortgage, it takes the land subject to the encumbrances without a personal obligation to pay the debt"); accord Restatement (Third) of Property (Mortgages) § 5.2(d) (1997) ("[w]hen mortgaged real estate is transferred without assumption of liability . . . , [t]he transferee does not become personally liable, by virtue of the transfer, for the obligation secured by the mortgage" ).[1]

Under these circumstances, to maintain an action against the Government for breach of a term of the promissory note, it is not enough for Carpenter to demonstrate that the note was

---

[1] Even assuming that in some circumstances a transfer of property securing a promissory note could be construed to effect a transfer of the rights and obligations contained in the note, the transfer in this case could not be so construed because it would be contrary to the express terms of the notes in question. Each note states: "Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government." Pl. Br. Exhibits E, G, J. Carpenter does not allege, much less establish, the existence of any written consent by the Government to the transfer of any part of the borrower's interest in the properties in question. Thus, the transfer itself was contrary to the terms of the note. Nor can Carpenter argue that she acquired the properties by operation of law through inheritance rather than as a result of a transfer. She alleges in her complaint that she became a joint tenant during the lifetime of the borrower, and, the evidence submitted with her response to our motion to dismiss confirms that the borrower conveyed title to the properties, to herself and Carpenter as joint tenants, by deed. Pl. Br. Exhibits B and C; Carpenter Declaration ¶ 4.

secured by a mortgage on property that she owned, or even that there were dealings between her and the Government in connection with the operation of the projects, as she contends. Rather, there must be privity between the Government and the plaintiff with respect to the note itself. See Cienega Gardens v. United States, 194 F.3d 1231, 1241-43, 1246 (Fed. Cir. 1998), cert. denied, 528 U.S. 820 (1999).

Cienega Gardens involved the prepayment restrictions imposed by the statute at issue here, the Emergency Low Income Housing Preservation Act, Pub. L. No. 100-242, 101 Stat. 1877 (1988) ("ELIHPA"), with respect to private loans insured by the Department of Housing and Urban Development ("HUD"). There, as here, the loans were made for the development of low and moderate income housing, were governed by regulatory agreements between the borrower and the Government, and were secured by mortgages or deeds of trust on the housing projects that the loans financed. There, as here, the borrowers' prepayment rights were stated in the notes evidencing the loans, but not in any of the other documents involved in the loan transaction. The Federal Circuit held that the plaintiffs could not maintain a breach of contract action against the Government based upon the prepayment right, despite the fact that the loan transaction involved certain agreements between the plaintiffs and HUD, because there was no privity between the plaintiffs and HUD with respect to the notes containing the prepayment right.

In Cienega Gardens, the reason for the lack of privity was that HUD was not the lender, and therefore was not a party to the note. Here, privity is lacking because the Carpenter was not the borrower, and therefore was not a party to the note. The legal consequence of this lack of privity is the same in both cases. As the Federal Circuit stated in summarizing its holding in Cienega Gardens:

> We hold that there was no privity of contract between HUD and the Owners with respect to prepayment of the deed of trust notes. Pursuant to each "Commitment for Insurance of Advances," HUD contracted to provide mortgage insurance, but did not agree to any prepayment terms. Neither were there any prepayment terms in the regulatory agreements between HUD and the Owners. The only contractual prepayment terms were contained in the deed of trust notes and the attached riders, to which HUD was not a party. Because there was no privity of contract between HUD and the Owners with respect to prepayment of the deed of trust notes, HUD could not be liable to the Owners for beach of contract by reason of the enactment of ELIHPA and LIHPRHA. . . .

194 F.3d at 1246 (emphasis added). Here, the only contractual prepayment terms are contained in the promissory notes, to which Carpenter was not a party. Because there was no privity of contract between the Government and Carpenter with respect to prepayment of the promissory notes, the Government cannot be liable to Carpenter by reason of the enactment of ELIHPA or the application of the prepayment restrictions created by ELIHPA.

## II. The Alleged Governmental Actions Did Not Constitute a Taking of Carpenter's Property

Carpenter's arguments concerning the takings claim suffers from the same flaw that pervades her privity argument. Although she acquired the properties subject to FmHA mortgages, she did not assume the loans and thus did not acquire the rights of the borrower set forth in the promissory notes. Thus, neither the right to utilize the property in a manner inconsistent with existing restrictions, nor the right to terminate these restrictions through prepayment, was a "'stick in the bundle of property rights'" that she acquired. See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), quoting Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374 (Fed. Cir. 2000). And, Carpenter does not allege that the Government imposed any use restrictions beyond those already contained in the contract documents. Rather,

she complains that ELIHPA affected her use of the property by limiting the borrower's ability to terminate existing contractual restrictions upon the use of the projects, through prepayment of the loan. If this limitation violated any right, however, it was a contract right belonging to the borrower, not Carpenter.

In our moving brief, we also demonstrated that plaintiffs' takings claim failed under the criteria identified by the Supreme Court in Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124 (1978), for assessing whether Government regulatory action effects a taking under the Fifth Amendment: (1) the extent to which the regulation has interfered with distinct investment-backed expectations; (2) the economic impact of the regulation upon the claimant; and (3) the character of the governmental action. In their response, plaintiffs have failed to demonstrate otherwise.

We established in our moving brief that Carpenter's investment in the properties in question was made after the enactment of ELIHPA and the related legislation of which she complains, and that, therefore, she cannot contend that this investment was made with an expectation that she would be able to utilize the property free of the restrictions imposed by this legislation. See .M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir. 1995). Carpenter responds by citing Palazzolo v. Rhode Island, 533 U.S. 606 (2001), for the proposition that the transfer of property after alleged taking occurred does not defeat a taking claim. As the Federal Circuit has observed, however, "Palazzolo did not reject the principle that 'the regulatory regime in place at the time the claimant acquires the property at issue helps to shape the reasonableness of those expectations.'" Appolo Fuels, Inc. v. United States, 381 F.3d

1338, 1349 (Fed. Cir. 2004), quoting Rith Energy, Inc. v. United States, 270 F.3d 1347, 1350 (Fed. Cir. 2001), quoting Palazzolo, 533 U.S. at 633 (O'Connor, J., concurring)).

We also established in our moving brief that the enactment and implementation of ELIHPA did not interfere with distinct investment-backed expectations essentially for the reasons stated by the United States Court of Appeals for the Eighth Circuit in Parkridge Investors, Ltd. v. Farmers Home Administration, 13 F.3d 1192, 1198 (8th Cir. 1994). In their response, plaintiffs argue that the this Court disagreed with Parkridge in Cienega Gardens. Pl. Br. 14. As we demonstrated in our moving brief, however, the Federal Circuit in Cienega Gardens distinguished Parkridge for reasons that make this case equally distinguishable from Cienega Gardens. It bears particular emphasis that the expectations that might be reasonable here differ from those in Cienega Gardens and Chancellor Manor in the following respect. The prepayment clause involved in those cases explicitly addressed the Government's regulatory authority, stating: "A mortgage indebtedness may be prepaid in full and the [Federal Housing] Commissioner's controls terminated without the prior consent of the Commissioner where . . . the prepayment occurs after the expiration of 20 years from the date of final insurance endorsement of the mortgage . . . ." 24 C.F.R. § 236.30 (1970) (emphasis added), quoted in Cienega Gardens, 331 F.3d at 1325 n.8. The prepayment clause involved here, however, does not mention prepayment "in full" or termination of any agency controls. Further, contrary to any expectations that might have arisen from the "without the prior consent of the Commissioner" clause, ELIHPA expressly conditioned the right to prepay HUD-insured private loans upon compliance with "a plan of action approved by the Secretary . . . . " See Pub. L. No. 100-242, § 221. See also Pub. L. No. 101-625, § 601(a), 104 Stat. 4249 (1990); 12 U.S.C. § 4101(a). The ELIHPA

provisions at issue here, however, did not impose conditions contrary to expectations explicitly articulated in the applicable prepayment clause.

Concerning the economic impact of the challenged Government action, Carpenter points to what she called "the "severe economic impact of being forced to remain in the Section 515 program . . . ." Pl. Br. 19. As we demonstrated in our moving brief, however, any such economic impact would be irrelevant, because no borrower is forced to remain in the program. In particular, all plaintiffs have been, and still are, able to leave the program pursuant to the sale provisions of 42 U.S.C. § 1472(c)(5)(A)(i).[2]

Finally, concerning the character of the Government's actions, Carpenter argues that ELIHPA improperly places upon her a financial burden that should be borne by the public generally, because "plaintiff did not cause or contribute to the need for low-income housing in rural areas." Pl. Br. 20. Owners did, however, create a danger of displacement of low-income tenants residing in their projects, when they sought to prepay their loans in order to raise rents.

## III. <u>This Action Can and Should Be Dismissed at this Stage of the Litigation</u>

Carpenter also argues that "the issues raised by defendant's motion to dismiss at best present disputed fact issues that must be resolved at trial." This is not so. In particular, the jurisdictional issue is based squarely upon a lack of privity that is apparent upon the face of the

[2] This avenue leads either to a sale for fair market value or to prepayment without restrictions. The regulation implementing this statute, formerly codified at 7 C.F.R. § 1965.215(c), has recently been revised and recodified, as part of a general recodification of the applicable prepayment regulations. These regulations now appear in 7 C.F.R. Part 3560 (2004) The provisions concerning offers to sell to a public or nonprofit organization appear at 7 C.F.R. § 3560.659 (2004). The Court need not address whether a takings claim would arise if a borrower were to sell a project pursuant to theses provisions but then contend that the price received was actually less than fair market value. Carpenter does not allege that this has occurred.

complaint, and is confirmed by Carpenter's failure, in her response, to demonstrate that privity exists notwithstanding that the complaint indicates otherwise. This is purely a question of law. Similarly, the principal flaws in Carpenter's takings claim derive from the fact that the property right purportedly taken depends upon a prepayment right that, as a matter of law, does not belong to Carpenter because it arises from a promissory note to which she is not a party. This, too, is purely a question of law.

Finally, Carpenter argues that "even assuming that the Court agrees with defendant's arguments, dismissal of the complaint would not be the appropriate remedy. Rather, in that event, plaintiff should be granted leave to substitute the estate of Ms. Maxine Carpenter, deceased, for the current plaintiff." Pl. Br. 21. The flaw in Carpenter's complaint, however, is not merely a nominal one that can be cured by substituting the proper party as plaintiff. The claim pleaded in the complaint is not that of the estate of Maxine Carpenter, who is described in the complaint as the borrower and former owner of the projects in question, but that of Roberta Carpenter, who is described as the current owner of the projects. The ownership rights alleged to have been infringed are past and future rights claimed by the latter, and the harm alleged to have been suffered is past and future harm to the latter, as the current owner of the projects. See Complaint ¶¶ 46-54. The only right alleged in the complaint that can be claimed by the estate is the alleged contractual right to prepay. The fact that this right belongs to the the estate rather than to the presently-named plaintiff is fatal to the latter's claims, since all of these claims are based upon an alleged breach of this right. But, if this alleged breach constitutes a basis for a claim by the estate, such a claim has not yet been pleaded. The estate may be entitled to file such a suit, but the present suit cannot be transformed into such a suit merely by substitution of plaintiffs.

CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, plaintiffs' claims should be dismissed with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

May 16, 2005