**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

ROBERTA R. CARPENTER,
SURVIVING JOINT
COTENANT

Plaintiff,

**File No. 04-01740**
**Judge George W. Miller**

v.

THE UNITED STATES

Defendant.

---

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

Jeff H. Eckland
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, Minnesota 55402
Telephone: 612-305-4444
Facsimile: 612-305-4439

Dated: September 1, 2005

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

I. Plaintiff's Acquisition Of The Real Property Placed Plaintiff In The Position Of The Original Borrower And Subject To The Mortgage .............................. 2

II. The Government Consented To Any Transfer Of Property That Occurred In Plaintiff's Acquisition Of The Property........................................................... 5

A. The Operation Of The Right Of Survivorship Is Not A Transfer Of A Property Right......................................................................... 6

B. The Agency Approved The Transactions At Issue ................................ 8

CONCLUSION.......................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Irvine v. Helvering*, 99 F.2d 265 (8th Cir. 1938) .......... 6

*Tooley v. Commissioner*, 121 F.2d 350 (9th Cir. 1941) .......... 6

*United States v. Jacobs*, 306 U.S. 363 (1939) .......... 6

## State Cases

*Hanson v. Bonner*, 661 P.2d 421 (1983) .......... 2

*In re Estate of Matye*, 645 P.2d 955 (Mont. 1982) .......... 7

*In re Estate of Vincent*, 98 S.W.3d. 146 (Tenn. 2003) .......... 4, 7

*Kinyon Inv. Co. v. Belmont St. Bank*, 221 P. 286 (Mont. 1923) .......... 3

*Raucci v. Davis*, 505 P.2d 887 (Mont. 1973) .......... 4

*Swope v. Jordan*, 64 S.W. 52 (Tenn. 1901) .......... 4

*Townsend v. Chase Manhattan Mortgage Corp.*, 657 N.W.2d 741 (Mich. App. 2002) .......... 5, 7, 8

## Statutes and Regulations

7 C.F.R. § 1965.3 .......... 9, 10

Mont. Code Ann. § 27-1-421 .......... 3

Mont. Code Ann. § 28-11-105 .......... 8, 9

Mont. Code Ann. § 71-1-101 .......... 2

Mont. Code Ann. § 71-1-103 .......... 2

Mont. Code Ann. § 71-1-203 .......... 9

Mont. Code Ann. § 71-1-222 .......... 3

Mont. Code Ann. § 71-3-106 .......... 3

Mont. Code Ann. § 72-3-812 .......................................................................... 6

Mont. Code Ann., Title 70, Chapter 20 (2003)............................................................ 6

**<u>Treatises, Books and Articles</u>**

Restatement (Third) of Property (Mortgages) § 5.1 ..................................................... 8, 9

Restatement (Third) of Property (Mortgages) § 5.2 ..................................................... 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ROBERTA R. CARPENTER,
SURVIVING JOINT
COTENANT

Plaintiff,

**File No. 04-01740**
**Judge G. Miller**

v.

THE UNITED STATES

Defendant.

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

On February 7, 2005, defendant filed a motion pursuant to RCFC 12 to dismiss plaintiff's claim alleging that plaintiff lacked contractual privity with the government and that the government's actions did not constitute a taking under the Fifth Amendment. ("Def. Mot.") Plaintiff's Opposition to Defendant's Motion to Dismiss was filed on April 21, 2005. ("Pl. Opp.") In her opposition, plaintiff demonstrated that privity of contract exists because she is the successor-in-interest by the right of survivorship to her deceased joint cotenant. *See* Pl. Opp., Part I. Additionally, plaintiff established that she has suffered a compensable taking, in accord with established federal law, of a property interest identified by the law of the Montana. *See* Pl. Opp., Part II. Defendant then filed a reply brief on May 16, 2005 in which it acknowledged that plaintiff is the sole owner of the property, and that the property is subject to the Agency's mortgage, but nonetheless asserted that plaintiff's property interest was independent of any obligations contained in the mortgage.

Following a Joint Status Conference, the Court issued an Order on July 26, 2005 ("Order") which directed plaintiff to file a supplemental brief and defendant to likewise respond.

In its Order, the Court requested plaintiff to address defendant's argument to the effect that plaintiff's acquisition of the real property at issue did not in itself entail the assumption of the debt secured by the mortgage, and does not put the acquiring party in the position of the borrower regarding the rights and obligations of the mortgage. Additionally, the Court requested plaintiff to describe the facts that establish that the Government gave its written consent to the transfer of the properties from Maxine Carpenter to Maxine and Roberta Carpenter as joint tenants, and to the subsequent exercise of the right of survivorship which left plaintiff as sole owner of the real property.[1]

As plaintiff has asserted in her Opposition, and as was reiterated by plaintiff's counsel at the Joint Status Conference, Roberta Carpenter is responsible for and obligated by the promissory note and mortgage executed by her deceased joint co-tenant.[2]

## I. Plaintiff's Acquisition Of The Real Property Placed Plaintiff In The Position Of The Original Borrower And Subject To The Mortgage.

Montana statutes and case law make clear that plaintiff is bound by the obligations of the mortgage executed by her deceased cotenant.[3] As plaintiff set forth in her Opposition, Montana statutory law provides that:

---

[1] The Court also ordered plaintiff to submit, after conferring with defendant, a listing of (1) related cases involved in the Court's ADR pilot program, (2) related cases that have been stayed, and (3) other similar cases that are proceeding forward. The parties have so conferred and plaintiffs are filing contemporaneously herewith the list requested by the Court.

[2] As the terms of the subject mortgages make clear, each mortgage is intended to secure "the note and . . . any agreements contained therein." *See* Pl. Opp., Decl. of R. Carpenter, Ex. F at 1, Ex. G at 1, and Ex. H at 1. Thus, the discussion herein regarding plaintiffs' rights and obligations under the mortgages for the subject properties applies equally to the promissory notes, including the prepayment rights contained therein.

[3] Note that under Montana law, a "'[m]ortgage' is a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." Mont. Code Ann. § 71-1-101. Additionally, a mortgage is considered a lien, and not a property interest. Mont. Code Ann. § 71-1-103; *Hanson v. Bonner*, 661 P.2d 421 (1983). These obligations are also real covenants that run with the land under Montana law. *See* Pl. Opp. at 7-

> Whenever an obligation in respect to real property would be specifically enforced against a particular person, *it may be in like manner enforced against any other person claiming under him by a title created subsequently to the obligation* except a purchaser or encumbrancer in good faith and for value, and except that any such person may exonerate himself by conveying all his estate to the person entitled to enforce the obligation.

Mont. Code Ann. § 27-1-421 (emphasis added); *see also* Pl. Opp. at 10.

The statute itself does not in any way qualify the "obligations" that may be enforced against successors in the chain of title. Thus, under the plain meaning of the statute, any obligation regarding real property may be enforced against a subsequent title holder, including obligations contained in mortgages. The statute's exceptions provide additional support for this conclusion. The last clause states that one may "exonerate himself [of an obligation regarding real property] by conveying all his estate to the person entitled to enforce the obligation." *Id*. When applied to a mortgage, the successor to title has the choice to continue performing the obligations in regards to the property, or offer the property to the mortgage holder – language that mirrors statutes regarding foreclosures.[4] Thus, the practical meaning of the law in Montana requires a successor in title to take over the mortgage obligations in order to enjoy the ownership of the property.

While the precise issue raised by the Court has not been squarely dealt with by the Montana courts, cases from Montana and other states confirm the conclusion mandated by the statute. For example, the Montana Supreme Court noted with respect to mortgagees who are

---

10. As a result, an alternative ground for dismissal of defendant's motion under Montana law – independent of the arguments raised in this supplemental brief – is the fact that both horizontal and vertical privity exists between plaintiff and defendant.

[4] The primary method of securing the debt is through the property itself, with the mortgagor held personally liable only in the event that the property does not cover the full indebtedness. *See* Mont. Code Ann. § 71-1-222; *Kinyon Inv. Co. v. Belmont St. Bank,* 221 P. 286 (Mont. 1923). Further, "[t]he existence of a lien upon property does not of itself entitle the person in whose favor it exists to a lien upon the same property for the performance of any other obligation than that which the lien originally secured." Mont. Code Ann. § 71-3-106.

joint co-tenants that, upon the death one co-tenant, the surviving co-tenant steps in the shoes of the deceased co-tenant with respect to the rights and obligations of the mortgage. *Raucci v. Davis* 505 P.2d 887, 888 (Mont. 1973) (a surviving co-holder of a mortgage became the "sole owner of the note and mortgage by right of survivorship") (decided on other grounds). As a result, the court recognized that if there are joint mortgagees, the death of one does not change the property interest nor the obligations that must be fulfilled by each party. There is no reason why the right of survivorship under Montana law should apply differently to mortgagees and mortgagors.

Decisions from other jurisdictions also make clear that the rules advocated by defendant are inapplicable to plaintiff's situation. The Tennessee Supreme Court recently addressed the very situation at hand, where a deceased mortgagor had previously purchased property that was later deeded to the mortgagor and the plaintiff as joint tenants with the right of survivorship. *In re Estate of Vincent*, 98 S.W.3d. 146 (Tenn. 2003). In that case, the court held that that the real property never became part of the deceased mortgagor's estate because of the right of survivorship. In so holding, the court found that the surviving joint co-tenant took the "property subject to the mortgage . . . [because when] 'the mortgagor conveys by deed absolutely silent with respect to the outstanding mortgage, the grantee, of course, takes the land encumbered by the mortgage, if he has actual notice of it, or constructive notice by record or otherwise.'" *Id.* at 150 (quoting *Swope v. Jordan*, 64 S.W. 52 (Tenn. 1901)). The court concluded that, "[u]nder these facts, having taken the property subject to the mortgage, [the surviving joint co-tenant] *must continue to pay the mortgage* in order to continue to enjoy ownership." *Id.* at 151 (emphasis added).

Indeed, there are only certain limited circumstances where courts have found that a surviving joint cotenant is not liable for a mortgage, such as when a market savvy mortgagee has constructive notice of an existing joint tenant but fails to secure their interest on the property before issuing the mortgage. *See Townsend v. Chase Manhattan Mortgage Corp.*, 657 N.W.2d 741 (Mich.App. 2002). In *Townsend*, where the defendant acquired the rights of the original mortgagee but did not compare the mortgage to the deed, the court refused to invoke the equities to "save the defendant from the mistake of the original mortgagee in not insisting that plaintiff pledge his interest in the property to secure the loan." *Id.* at 745. The court also considered the unequal positions of the parties when it concluded, "[w]e think it insufficient to invoke equity to save the mortgagee from its own mistake, particularly where the mortgagee is a sophisticated commercial lender." *Id*.

Accordingly, under the facts presented here, applicable law clearly provides that Robbie Carpenter took the properties at issue subject to the relevant agreements and stepped into the shoes of her deceased joint co-tenant with respect to the rights and obligations set forth in the mortgages and promissory notes between the parties. This fact explains why, as detailed in part II.B, the Agency has consistently treated plaintiff as the sole owner of the property, with all of the rights and obligations incident to ownership as reflected in the subject contracts.

## II. The Government Consented To Any Transfer Of Property That Occurred In Plaintiff's Acquisition Of The Property.

Maxine Carpenter deeded three properties to herself and Roberta Carpenter as joint tenants with the right of survivorship. The Agency, by its actions and writings, endorsed the joint tenancy of the properties and continued to interact with the owners as participants in the regulatory programs. Upon the death of Maxine Carpenter, Roberta Carpenter became the sole owner of the properties as the sole surviving joint tenant. Contrary to defendant's arguments,

this operation of the right of survivorship did not constitutes a "transfer" of the property. Further, even assuming that Roberta Carpenter's right of survivorship qualified as a sale or transfer of the property, she would still be subject to the mortgage because she assumed the obligations and the defendant consistently has treated her as so obligated. [5]

### A. The Operation Of The Right Of Survivorship Is Not A Transfer Of A Property Right.

The execution of the right of survivorship upon the death of a joint tenant is not a "transfer" of a property interest. For this reason, the citations offered by defendant are inapposite. *See* Def. Reply at 3. Federal courts have held that the execution of the right of survivorship is not a "transfer" of property interests. *See United States v. Jacobs*, 306 U.S. 363, 370 (1939) (noting that by survivorship the tenancy "remains to the survivors"); *Irvine v. Helvering*, 99 F.2d 265, 269 (8th Cir. 1938) (holding, in the context of when tax obligations apply, that there was no transfer from the deceased cotenant to his survivor); *see also Tooley v. Commissioner of Internal Revenue*, 121 F.2d 350, 356 (9th Cir. 1941) ("In California the surviving [joint] cotenant no more has anything transferred to him on the other cotenant's death

---

[5] If the property passed through the estate of the deceased joint co-tenant and plaintiff was treated as an heir, plaintiff would have been able under Montana law to take over the mortgage incident to owning the property. The relevant statute reads:

> "If any of the assets of the estate are encumbered by mortgage…, the personal representative may … *renew or extend any obligation secured by the encumbrance*, or convey or transfer the assets to the creditor in satisfaction of his lien, in whole or in part, whether or not the holder of the encumbrance has filed a claim, if it appears to be in the best interest of the estate."

Mont. Code Ann. § 72-3-812 (emphasis added). Further, the official comment provides guidance for those heirs that take over the mortgage, stating that "[unless specifically stated in a will], a specific devisee of mortgaged property takes subject to the lien without right to have other assets applied to discharged the secured obligation." Mont. Code Ann. § 72-3-812 (comment). These statutes contemplate a devisee continuing under the mortgage if it makes economical sense (*i.e.*, the value of the property is greater than the mortgage balance). If an heir, taking subject to devise, is permitted to continue under a mortgage, Montana would recognize that a mortgage applies to a surviving joint co-tenant.

[than] does the grantee of a remainder in fee have anything transferred to him by the life tenant at the latter's death.").

The Montana Code is consistent with this explanation of the right of survivorship. Although the Montana courts have not had an occasion to discuss the implications of a joint tenancy in great detail, the structure of the Montana Code itself is illuminative. The chapter entitled "Transfer of Real Property" only discusses the right to survivorship as a consequence of a transfer to joint tenants, and not as a type of transfer itself. *See* Mont. Code Ann., Title 70, Chapter 20 (2003). Further, a "transfer" must be in writing, while the right to survivorship is self-executing upon the death of a joint tenant. *See In re Estate of Matye*, 645 P.2d 955 (Mont. 1982) (holding the right of survivorship exists under the deed grant and is not related to the estate of the deceased). The creation of the joint tenancy requires a written document, because it is a transfer, but the execution of the right of survivorship does not. A surviving joint tenant has, as stated in *Jacobs*, a "distinct shifting of economic interest, a decided change for the survivor's benefit," but *not* a change in the underlying property interest. 306 U.S. at 371.

Other states have implemented rules in accord with federal and Montana law. For example, the Tennessee Supreme Court held that a party's "assertion that his taking by the right of survivorship is the 'equivalent of a testamentary bequest' has no merit." *In re Estate of Vincent*, 98 S.W.3d. 146, 149 (Tenn. 2003) (internal quotation marks omitted).[6] Michigan courts have similarly commented that the operation of the right of survivorship means that surviving joint tenant "is neither a successor nor an assign." *Townsend v. Chase Manhattan Mortgage*

[6] In fact, the court held that the property never became part of the estate due to the right of survivorship. *In re Estate of Vincent*, 98 S.W.3d. 146, 149 (Tenn. 2003) ("property passing by right of survivorship passes by deed and cannot be utilized by the administrator or executor in cases of insolvency").

*Corp.*, 657 N.W.2d 741, 744 (Mich. App. 2002). Therefore, contrary to defendant's assertions, the operation of the right of survivorship does not constitute a transfer.

**B. The Agency Approved The Transactions At Issue.**

Even assuming that a "transfer" occurred here, the evidence makes clear that defendant consented to both the property being owned by Maxine and Roberta Carpenter as joint co-tenants and the acquisition of the property by Roberta as sole owner upon the death of Maxine.

A "transfer" of mortgaged real estate may be made either with or without an assumption of the mortgage. *See* Restatement (Third) of Property (Mortgages) §§ 5.1, 5.2. A person assumes liability by means of a promise to either the transferor or to the mortgagee. *Id.* § 5.1. When such a promise is given, the mortgage remains effective against the property, personally against the original transferor, and against the transferee in possession of the property. *Id*. If there is no assumption of liability for the mortgage, then the mortgage remains effective against the property and against the transferor personally. Restatement (Third) of Property (Mortgages) § 5.2. With no assumption, the transferee is not personally liable for the debt secured by the property, and the only way to recover is an action against the property. *Id*.

Montana law states that "[t]here is only one action for the recovery of debt or the enforcement of any right secured by a mortgage upon real estate, and that action must be in accordance with the provisions of this part" (i.e., foreclosure proceedings). Mont. Code Ann. § 71-1-222 (emphasis added). Thus, a mortgagee has only two choices when seeking to enforce the terms of a mortgage: the mortgagee may institute foreclosure proceedings or choose to ratify the resumption of the status quo by accepting payments on the mortgage. Here, there is no indication that the agency intends to foreclose upon the property.

In addition, under Montana law, the requirements for an assumption of a mortgage are far more liberal than the requirements for the creation of mortgage in the first instance. *Compare* Code Ann. § 28-11-105(3)(b) ("A promise to answer for the obligation of another … is deemed an original obligation of the promisor and *need not be in writing*: … where the promise, being for an antecedent obligation of another, is made upon a consideration: … beneficial to the promisor, whether moving from either party to the antecedent obligation or from another person) (emphasis added); Restatement (Third) of Property (Mortgages) § 5.1, at 347 (1997) *with* Mont. Code Ann. § 71-1-203 ("A mortgage of real property can be created, renewed, or extended only by writing, with all the formalities required in the case of a grant of real property."). In other words, Montana requires all of the usual formalities to alter or amend terms of the mortgage, but it only takes a "promise to answer" to step into the mortgagor's shoes. Thus, when the actions of the parties demonstrate an assumption of an agreement, Montana courts will enforce that agreement.

Here, there is ample evidence that the Agency considers Roberta Carpenter the owner, and expects her to perform the obligations memorialized in the mortgage. As detailed below, the evidence shows that Roberta Carpenter has stepped into the shoes of Maxine Carpenter, not only as an owner of the real property, but also as the individual responsible for performing the obligations of the original mortgage. Further, the Agency has accepted and approved of Roberta Carpenter's performance of the original mortgage obligations in written documents since the death of Maxine Carpenter.[7]

---

[7] Similarly, the Agency has clearly demonstrated, through its actions and writings, its approval of the creation of the joint tenancy of Maxine and Roberta Carpenter. A review of the writings incident to ownership, specifically the budgets submitted for Agency approval, demonstrate the Agency's acquiescence to the joint tenancy. For example, the budget for 2003 shows that

The primary obligation of any mortgagor is to provide for the payment of the mortgage. *See* 7 C.F.R. § 1965.3 ("borrower" responsibilities include "repaying principal and interest on a timely basis pursuant to the loan documents, paying real estate taxes …, providing adequate property insurance …, maintaining, protecting, and accounting to the FmHA or its successor agency . . . for all real estate security, and complying with other loan requirements."). The budget forms list Maxine Carpenter and Roberta Carpenter as "borrower" for each of the loans. *See* Ex. A, B, C. As indicated in the budget for each property, Roberta Carpenter provides for the mortgage payments on each of the properties. *Id*. Considering the death of Maxine Carpenter, the Agency currently holds only plaintiff responsible as the "borrower" of the loans. Further, these documents bear the signature and approval of the Agency. Ex. A at 6; Ex. B at 6; Ex. C at 6.

Aside from the documents that explicitly recognize Roberta Carpenter as liable for the obligations, the Agency has expressly allowed Roberta Carpenter to exercise rights that were previously exercised by Maxine Carpenter. *See* Ex. D; Ex. F. This includes authorization to access the reserve accounts for Sage Apartments, Ex. D, and accounts for Project I and Project II, Ex. F.

The Agency has treated Roberta Carpenter as if she was an owner in the Section 515 program in other respects as well. For example, the Agency requested her to cover a portion of appraisal costs pursuant to Agency regulations, an obligation for which only owners within the program are responsible. Ex. E; *See also* RD Instruction 1922-B, § 1922.54 ("The appraisal will be made when the applicant <u>has been found to be eligible</u> and sufficient information has been developed to enable the appraiser to evaluate the property".) (emphasis added). In short, the

---

Maxine and Roberta Carpenter were represented as owners in a joint tenancy, and this written document is approved by the Agency as indicated by the signature of the Agency representative.

actions of defendant, as evidenced by the numerous written documents, demonstrate that the Agency considers plaintiff Roberta Carpenter a participant in the Section 515 program with respect to all of the rights and obligations contained in the loan documents executed between the parties.[8]

**CONCLUSION**

For the above stated reasons, plaintiff respectfully requests that defendant's motion to dismiss be denied.

Dated: September 1, 2005

**Filed Electronically**

**s/Jeff H. Eckland**

Jeff H. Eckland
Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Tele: 612-305-4444
Fax: 612-305-4439

[8] Finally, should the Court for some reason conclude that Robbie Carpenter is not the proper plaintiff in this action, any perceived deficiency could be cured by a substitution of the real party in interest under RCFC 17, rather than a dismissal of the complaint. However, in the event that a new complaint is deemed to be necessary (for example, in the name of the estate of Maxine Carpenter), plaintiff notes that the statute of limitations for any such new complaint may be found to have run by November 1, 2005 for two of the properties at issue, based upon dates when plaintiff submitted prepayment requests on those properties.