IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERTA R. CARPENTER,<br>Surviving Joint Cotenant,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-1740C<br>(Judge George W. Miller) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

INTRODUCTION

In our moving brief, we established that plaintiff, Roberta R. Carpenter ("Carpenter"), was never a party to the contract upon which her claims are based, and that, therefore, there was no applicable waiver of sovereign immunity or source of jurisdiction in this Court to entertain the contract claims asserted, or any cause of action stated for breach of contract. We also demonstrated that the complaint failed to state a cause of action for a taking of property without just compensation.

After the filing of Carpenter's response and our reply, a status conference was held, in which the motion, among other matters, was discussed. Pursuant to this discussion, the Court issued an Order on July 26, 2005 ("Order"), requiring supplemental briefing concerning certain questions relevant to the breach of contract claim. Specifically, the Order directed plaintiff's counsel to address two arguments raised in the Government's reply brief:

> the argument set forth at pages 3 and 4 of defendant's reply brief to the effect that acquisition of real property subject to a mortgage does not in itself entail the assumption of the debt secured by the mortgage, and does not place the acquiring party in the position of the borrower with respect to the rights and obligations created by the note . . . .

Order 1-2, and

> the argument set forth in footnote 1 on page 3 of defendant's reply brief to the effect that even if in some circumstances a transfer of property securing a promissory note could be construed to effect a transfer of the rights and obligations contained in the note, the transfer in this case could not be so construed because it would be contrary to the express terms of the notes in question.

Id. at 2. Concerning the latter issue, the Court requested that Carpenter "describe with specificity the facts that she contends establish that the Government gave its 'written consent' to the transfer of the properties from Maxine to herself and Roberta as joint tenants with right of survivorship and to the transfer from Maxine to Roberta as sole owner by virtue of Roberta's having survived Maxine." Id. Finally, the Court directed the Government, in responding to plaintiff's supplemental brief, to

> address the argument set forth at pages 7-10 of plaintiff's opposition to defendant's motion to dismiss . . . , to the effect that under Montana law the rights and obligations set forth in the contract documents run with the land and therefore plaintiff became subject to the rights and obligations set forth in the notes when she acquired her interest in the properties.

Id.

With respect to the two arguments Carpenter has been directed to address, her supplemental brief misses the mark. Concerning the first argument, Carpenter essentially repeats the third of the above-mentioned three arguments. She focuses upon the extent to which, under Montana law, rights and obligations incident to an interest in real property are transferred by virtue of a transfer of the real property interest itself; she fails, however, to provide any authority from Montana or any other jurisdiction to support the notion that rights and obligations set forth in a promissory note, which are independent of any interest in real property but are merely secured by such an interest, are transferred by virtue of a transfer of the real property interest.

Regarding both the first and the third argument, Carpenter confuses the issue by lumping together the promissory note and the mortgage under the label "contract documents," as if there were only a single contract involving only a transfer of real property. That is not the case. The promissory note was for a construction loan. The mortgage secured that loan. The contractual obligation alleged to have been breached was contained in the note, not the mortgage. Carpenter was never a party to the note. Her argument that as transferee of the mortgaged property she stepped into the shoes of the mortgagor under the mortgage begs the question at issue here: whether she also stepped into the shoes of the promissor under the note based solely upon a transfer of the property.

Finally, concerning the second argument, plaintiff has demonstrated, at most, that the Government began to treat Roberta Carpenter as the owner of the projects in question some time after the death of Maxine Carpenter. None of these documents indicate whether the Government considered plaintiff – or that plaintiff represented herself to be – an owner as a surviving joint tenant, as executor of the estate of Maxine Carpenter, or as an heir of Maxine Carpenter. None of these documents indicates that the Government was ever aware of any transfer of the projects from Maxine to Roberta, much less that the Government consented to the transfer in writing.

## ARGUMENT

### I. Plaintiff's Acquisition of the Real Property Did Not Place Carpenter In the Position of the Original Borrower under the Promissory Note

In her supplemental brief, Carpenter states: "Montana statutes and case law make clear that plaintiff is bound by the obligations of the mortgage executed by her deceased cotenant." Pl. Supp. Br. 2 (emphasis added; footnote omitted). We agree. From this premise, however, Carpenter leaps to the conclusion that she "stepped into the shoes of her deceased joint co-tenant

with respect to the rights and obligations set forth in the mortgages and promissory notes between the parties." Pl. Supp. Br. 5 (emphasis added). This conclusion does not follow from the above-quoted premise or from any of the arguments and authorities presented in between the premise and the conclusion. These arguments and authorities all concern the extent to which a transferee of an interest in the real property succeeds to the rights and obligations relating to the property, including rights and obligations under a mortgage on the property. None of these authorities suggests that such a transferee succeeds to the rights and obligations stated in a promissory note merely by virtue of the transfer of the property securing the note.

Carpenter simply assumes, without explanation, that a debt, a note promising to pay the debt, and a mortgage securing a debt are all one and the same. Thus, Carpenter states: "As the terms of the subject mortgages make clear, each mortgage is intended to secure 'the note and . . . any agreements contained therein.' . . . Thus, the discussion herein regarding plaintiffs' rights and obligations under the mortgages for the subject properties applies equally to the promissory notes, including the prepayment rights contained therein." Pl. Supp. Br. 2, n.2. The fact that the mortgages in question were intended to secure promissory notes and agreements contained therein is not remarkable; the same is true of mortgages generally. It does not follow from such an intent that whatever is true of mortgages applies equally to the promissory notes that they secure. To assume that it does begs the question at issue. Further, such an equation of mortgages and notes would mean that the assumption of a mortgage would always carry with it the assumption of the underlying debt. Yet, as we have demonstrated, the general rule is quite the opposite. See Restatement (Third) of Property (Mortgages) § 5.2(d) (1997) ("[w]hen mortgaged real estate is transferred without assumption of liability . . . , [t]he transferee does not become personally liable, by virtue of the transfer, for the obligation secured by the mortgage" ).

Carpenter has not demonstrated that the rule is different in Montana, or that it is different for mortgages and notes of the kind involved here. In fact, in her argument concerning whether the Government consented to the transfer of the property to her, she asserts that the rule stated in the Restatement, quoted above, is applicable here. As Carpenter puts it: "A 'transfer' of mortgaged real estate may be made either with or without an assumption of the mortgage. . . . With no assumption, the transferee is not personally liable for the debt secured by the property, and the only way to recover is an action against the property." Pl. Supp. Br. 8, citing Restatement (Third) of Property (Mortgages) § 5.1, 5.2.[1]

Moreover, the only Montana authority cited by Carpenter that bears upon the matter at issue supports the Government's position, not Carpenter's. See Kinyon Inv. Co. v. Belmont St. Bank, 221 P. 286 (Mont. 1923), cited in Pl. Supp. Br. 3, n.4. In Kinyon, the court held that where a grantee of mortgaged property expressly agrees to pay the mortgage, the grantee thereby also assumes a contingent personal liability, in case of foreclosure, to pay a deficiency judgment if the property fails to sell for an amount sufficient to discharge the debt. Id. at 288. In so holding, the court adopted what it described as "the general rule in this country that where one purchases mortgaged premises from the mortgagor and assumes and agrees to pay the mortgage he becomes liable therefor, which liability inures to the benefit of the mortgagee who may enforce it in an appropriate action." Id. at 287 (emphasis added). The court further observed

[1] In her argument concerning the written consent issue, Carpenter implies that she assumed liability to pay the debt by virtue of the fact that she made payments on the mortgage. The mere act of payment, however, is not the same as an assumption of liability. Rather, payment is necessary in order to avoid foreclosure, regardless of whether the owner of the property is personally liable to pay the debt. There is no evidence that Carpenter in fact assumed liability to pay the debt, or made any promise to the Government with respect to payment of the debt.

that the basis for the mortgagee's right of action against the purchaser was "the rule of equitable subrogation." Id. at 288. The court explained that, as between the seller (the original mortgagor) and purchaser, the purchaser is viewed as the principal debtor and the seller as a surety, and that, under the rule of equitable subrogation, the mortgagee may assert the surety's rights as a basis for proceeding directly against the principal debtor. Id. at 287-88.

Significantly, the court in Kinyon did not hold that a grantee of mortgaged property stands in the shoes of the grantor in relation to the mortgagee in any respect, absent an express assumption by the grantee of the obligation to pay the debt secured by the mortgage. Further – and most significant with respect to the jurisdictional issue before the Court in this case – the court in Kinyon did not suggest that the grantee's acquisition of the mortgaged property creates privity of contract with the mortgagee, even where the grantee does assume the obligation to pay the debt. On the contrary, he court rejected the notion that the mortgagee's right of action against the grantee was contractual. Further, in support of its reliance upon equitable subrogation as the basis for this right of action, the Kinyon court cited Keller v. Ashford, 133 U.S. 610 (1890). In that case, the United States Supreme Court held that, where a mortgagor conveys land subject to the mortgage, which the grantee assumes and agrees to pay, the mortgagee may maintain a suit in equity against the grantee, id. at 622-26, but may not maintain an action at law against the grantee, because the mortgagee and grantee lack privity of contract. Id. at 620-22.

It must be recalled that the jurisdictional issue in this case is not whether the Government possesses a right of action against Carpenter to enforce payment of the promissory note, or what procedural vehicles are available for this purpose. The issue, rather, is whether Carpenter's

status as transferee of the mortgaged property creates privity of contract between her and the Government. Under the reasoning of the Supreme Court in Keller, it does not.

## II. The Government Did Not Give Written Consent to A Transfer of Any Interest in the Properties in Question from Maxine Carpenter to Roberta Carpenter

In response to the Court's directive that Carpenter "describe with specificity the facts that she contends establish that the Government gave its 'written consent' to the transfer of the properties from Maxine to herself and Roberta as joint tenants with right of survivorship and to the transfer from Maxine to Roberta as sole owner by virtue of Roberta's having survived Maxine," Order 2, Carpenter argues that the Government consented to the first transfer (to herself and Maxine as joint tenants), and that her subsequent acquisition of sole ownership as the surviving joint tenant did not constitute a transfer. We do not quarrel with the second point. Carpenter's status as a joint tenant, however, was the result of the earlier transfer to herself and Maxine as joint tenants, and, none of the facts Carpenter advances establish that the Government gave its written consent to this transfer.

As ostensible evidence of written consent, Carpenter first points to the annual budgets submitted for Government approval with respect to the three projects in question. Carpenter states that "[t]he budget forms list Maxine Carpenter and Roberta Carpenter as 'borrower' for each of the loans. See Ex. A, B, C, " and that "these documents bear the signature and approval of the Agency. Ex. A at 6; Ex. B at 6; Ex. C at 6." Pl. Supp. Br. 10. What the cited exhibits indicate, however, is merely that, the block on the budget form labeled "borrower" was filled in with the handwritten notation "Maxine Carpenter/Bobbie Carpenter," and that the agency approved the proposed budgets submitted for these projects. Assuming that the officials who reviewed and approved these budgets noticed the inclusion of the name "Bobbie Carpenter" in

the "borrower" block at all, the notation would not necessarily signify co-ownership. Indeed, the notation could not signify co-ownership, because Maxine Carpenter died several years before these budgets were submitted. See Declaration of Roberta Carpenter in Support of Plaintiff's Opposition to Motion to Dismiss, filed April 22, 2005. When the budgets were submitted, the notation would more likely be construed to signify that Roberta Carpenter was acting as executrix or personal representative of the estate of Maxine Carpenter. Whatever the notation was intended to signify, it simply indicates nothing whatsoever about any transfer that might have occurred. And, in any event, the agency's approval of the submitted budget is not tantamount to approval of any transfer or other change in ownership that may have been hinted at in this notation.

Similarly, the other documents to which Carpenter points as evidence of the Government's consent to the transfer do not establish that the Government was aware of the transfer, much less that the Government consented to it. These documents may indicate that the Government viewed Roberta Carpenter to be acting as or for the owner. All of these documents, however, post-date Maxine Carpenter's death. In the absence of any transfer of the projects, the owner would be the estate of Maxine Carpenter, and the estate would act through its representative. Nothing in the documents cited by plaintiff indicates that she was acting other than as a representative of the estate, and nothing in these documents indicates that the Government was aware that plaintiff acquired ownership of the projects as a result of a deed executed by Maxine Carpenter.

Finally, even assuming that the agency at some point became aware of the transfer and tacitly acquiesced in Carpenter's exercising ownership rights based upon the transfer, this is not

the same as the Government giving written consent to the transfer. Carpenter has offered no evidence of any such written consent, because there is none.

CONCLUSION

For the foregoing reasons, and for the reasons stated in our previous briefs in this matter, this action should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

September 16, 2005